UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JENELLE SMAGALA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:17-cv-03648-JPH-DLP ) |
| EMBASSY SUITES MANAGEMENT LLC, | ) ) ) |
| Defendant. | ) |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Janelle Smagala fell down the stairs in her two-level suite at the Embassy Suites. She contends that Embassy Suites is liable for her resulting injuries because it negligently failed to make the stairs reasonably safe. Embassy Suites has moved for summary judgment. Dkt. [65]. For the reasons that follow, that motion is **GRANTED**.

# I.
# Facts and Background

Because Embassy Suites has moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca,* 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

Janelle Smagala married Timothy Junk on April 15, 2017. Dkt. 67-2 at 3 (Smagala Dep. at 10). Around midnight—after the ceremony, dinner, and reception—Ms. Smagala went to their two-level suite at the Embassy Suites. Dkt. 86-2 at 9–10 (Smagala Dep. at 40–41). Without going upstairs, she

1

dropped a few things off and left to meet friends at a restaurant. *Id.* at 9–12 (Smagala Dep. at 40–43).

Ms. Smagala and Mr. Junk returned to the suite about 2:00 or 2:30 a.m. *Id.* at 13 (Smagala Dep. at 48). Ms. Smagala used the downstairs bathroom, then went upstairs. *Id.* at 15, 17 (Smagala Dep. at 59, 62). She had to pull her wedding dress tightly around her because "the steps were pretty steep." *Id.* at 15 (Smagala Dep. at 59). She used the handrail "and just went really slow." *Id.* She then changed out of her dress and went to bed. *Id.*

About 4:00 a.m., Ms. Smagala woke up, needing to use the bathroom. *Id.* at 17 (Smagala Dep. at 62); dkt. 67-5 at 14 (Junk Dep. at 54). She was "a little disoriented" since she'd just woken up, so instead of using the upstairs bathroom, she headed toward the downstairs bathroom that she had already used. Dkt. 86-2 at 17 (Smagala Dep. at 62). At the top of the stairs, she looked for a light switch, but the room was "really dark" and she couldn't find one. *Id.* She instead found the top of the stairs and went down one step, while still looking for a light switch. *Id.* at 17–18, 20 (Smagala Dep. at 62–63, 67). Then, her "right foot slipped right off the top of the top tread" and she fell to a landing partway down the staircase. *Id.* at 17–18 (Smagala Dep. at 62–63, 73–74); dkt. 67-2 at 19. Ms. Smagala called for help and Mr. Junk turned on a light. Dkt. 67-2 at 19 (Smagala Dep. at 73–74). Ms. Smagala tried to get up, but she fell again the same way down the rest of the stairs. *Id.* She suffered wrist, hand, finger, and shoulder injuries. *Id.* at 20–21 (Smagala Dep. at 80–84).

Ms. Smagala filed this action alleging that Embassy Suites was negligent in failing to make the suite's stairs reasonably safe. Dkt. 1-2. Embassy Suites removed the case to this Court and moved for summary judgment. Dkt. 1; dkt. 65.

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). Indiana substantive law governs this case. *See Webber v. Butner*, 923 F.3d 479, 480–81 (7th Cir. 2019).

## III.
## Analysis

"To succeed on a negligence claim under Indiana law, the plaintiff must prove the standard elements: that the defendant had a duty to the plaintiff, that the defendant breached that duty, and that the breach proximately caused

3

the plaintiff's injury." *Carman v. Tinkes,* 762 F.3d 565, 566 (7th Cir. 2014). Embassy Suites argues that it's entitled to summary judgment because no reasonable jury could find that it breached its duty of care or that any breach caused Ms. Smagala's fall and injuries. Dkt. 66 at 13–17. Ms. Smagala contends that the risk presented by the stairs was unreasonable and that Embassy Suites failed to exercise reasonable care to protect her from this danger. Dkt. 85 at 12–21. The Court must apply Indiana law by doing its "best to predict how the Indiana Supreme Court would decide" the issues. *Webber,* 923 F.3d at 482.

### A. Applicable duty of care

As a business guest, Ms. Smagala was Embassy Suites's invitee. *See Roumbos v. Vazanellis,* 95 N.E.3d 63, 66 (Ind. 2018) (citing Restatement (Second) of Torts § 332 (1965)). "Under Indiana premises-liability law, the owner or possessor of land owes the highest duty of care to its invitees: the duty to exercise reasonable care for their protection while they are on the premises." *Id.* (citing *Burrell v. Meads,* 569 N.E.2d 637, 639 (Ind. 1991)).

Indiana premises-liability law follows the Restatement (Second) of Torts. *Id.* The Restatement § 343 explains the reasonable-care standard:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>     (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

*Id.* (quoting Restatement § 343).

Section 343 is to be read with section 343A, which adds that a possessor of land "is generally not liable for injuries resulting from 'known or obvious' dangers." *Id.* (citing Restatement § 343A(1)). A condition is "obvious" under section 343A if "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment." *Id.* (citing Restatement § 343A cmt. b).

### B. The danger was obvious

Ms. Smagala argues that the stairs here were dangerous because their tread depth was too shallow and they were unlit. Dkt. 85 at 15. But even assuming for summary judgment purposes that the stairs were dangerous, the Court believes that the Indiana Supreme Court would find that any danger was obvious and thus cannot be the basis for negligence liability against Embassy Suites.

For the tread depth, the stairs were plainly visible if a light was on. *See* dkt. 86-5. And since the bedroom was upstairs, a guest would have to climb the stairs at least once to go to bed. *See* dkt. 67-5 at 11 (Junk Dep. at 43). That's enough for a reasonable guest to recognize any danger from narrow tread depth before going down the stairs. *See Walters v. JS Aviation, Inc.*, 81

5

N.E.3d 1160, 1163 (Ind. Ct. App. 2017) ("Steps and stairs are an everyday occurrence, and invitees are generally expected to see them and know how to use them."). This case is thus like *Smith v. Baxter*, 796 N.E.2d 242 (Ind. 2003). There, a ladder going up a grain bin was dangerous because, among other reasons, its rungs were too close to the bin. *Id.* at 245–46. The Indiana Supreme Court called the ladder's dangers "obvious hazards" that revealed the "obvious nature of the risk." *Id.*[1] Since the ladder that provided too little depth for a foot presented an obvious danger, the steps here do too. *See id.*; *Walters,* 81 N.E.3d at 1163.

Ms. Smagala argues that the tread depth was unreasonably dangerous because it did not meet the building codes in effect when the hotel was built. Dkt. 85 at 15. But she recognizes that a building code violation is not enough to create liability. *Id.* at 17 ("Embassy is not liable for building the stairs in violation of building codes."). And building codes cannot hide the obvious nature of a risk. *See Smith,* 796 N.E.2d at 246 (calling the ladder rung depth hazard "obvious" even though the ladder was not as far from the grain bin as the American National Standards Institute suggested).

The danger from the stairs' lack of lighting is similarly obvious. No designated evidence shows that anything except darkness obscured the view of the stairs. Darkness itself is obvious, *see Podemski v. Praxair, Inc.,* 87 N.E.3d

---

[1] The Indiana Supreme Court upheld a jury verdict for the plaintiff on the "much closer question" of whether exceptions to the known or obvious rule applied. *Smith,* 796 N.E.2d at 246. As explained below, Ms. Smagala does not argue that those exceptions apply here, and the designated evidence does not support them.

6

540, 548 (Ind. Ct. App. 2017), so the unlit stairs posed an obvious danger.[2] In fact, the darkness alone makes the danger obvious regardless of the stairs' tread depth, because a reasonable guest would recognize the danger of braving stairs in the dark—whether those stairs were familiar or not. *See id.*

The stairs here are therefore not like the step in *Walters*, which was "in an unlikely spot" that required "multiple warnings." 81 N.E.3d at 1163–64. Instead, this case involves ordinary stairs that "are an everyday occurrence." *Id.* at 1163. That makes any danger obvious and means that "invitees are generally expected to see [the stairs] and know how to use them." *Id.*

Nor is this case like the *Roumbos* or *Converse* cases that Ms. Smagala relies on. Dkt. 85 at 18–19. In *Roumbos*, the Indiana Supreme Court held that the obviousness of telephone wires on the floor of a hospital room presented a jury question because the wires ran partially underneath a table and might also have been hidden by the hospital bed. 95 N.E.3d at 68. And in *Converse*, the Indiana Court of Appeals found that whether a loose landscaping rock presented an obvious danger turned on a genuine issue of material fact. *Converse v. Elkhart Gen. Hosp.*, 120 N.E.3d 621, 624–26, 629 (Ind. Ct. App. 2019). This case is different for two reasons. First, stationary stairs that are plainly visible or obscured only by darkness are far more obvious than hidden wires and a loose landscaping rock that is the same color as the sidewalk it sits on. And second, "Indiana's unique summary judgment standard . . . . requires

---

[2] Since the danger from the unit stairs was obvious, the Court does not resolve whether it was also known to Ms. Smagala.

7

the moving party to 'affirmatively negate an opponent's claim.'" *Id.* at 625, 629 (quoting *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014)). *Converse* emphasized that heightened standard in denying summary judgment, *id.*, but it does not apply in federal court, *Carson v. ALL Erection & Crane Rental Corp.*, 811 F.3d 993, 998 (7th Cir. 2016).

Ms. Smagala also argues that the danger from the stairs was not obvious because she had only one experience with the stairs (going up not down) before her fall and because it was dark when she fell. Dkt. 85 at 19. The parties also argue about how much Ms. Smagala had to drink before her fall and whether she was impaired. Dkt. 85 at 1–4. But whether a danger is obvious is not a subjective or plaintiff-specific inquiry. *Couvillion v. Speedway LLC*, 673 Fed. App'x 558, 559 (7th Cir. 2016) (citing *Miller v. Rosehill Hotels, LLC*, 45 N.E.3d 15, 20 (Ind. Ct. App. 2015)); *see Roumbos*, 95 N.E.3d at 67 (defining "obvious" under § 343A). Instead, the obviousness inquiry "asks how owners of business premises should expect reasonable customers to understand and react to risks." *Couvillion*, 673 Fed. App'x at 559. Here, Embassy Suites could reasonably expect that its guests would understand and account for the obvious danger from unlit stairs. *See* Restatement § 343A cmt. e ("[The reasonable-care duty] does not ordinarily require precautions, or even warning, against dangers which are . . . so obvious . . . that [the guest] may be expected to discover them."); *Douglass v. Irvin*, 549 N.E.2d 368, 370 (Ind. 1990); *Salima v. Scherwood S., Inc.*, 38 F.3d 929, 933 (7th Cir. 1994) (applying Indiana law).

8

## C. No exception to the known-or-obvious-danger rule applies

There is an exception to the known-or-obvious-danger rule "if a reasonable landowner would anticipate the harm despite the . . . danger's obviousness." *Roumbos*, 95 N.E.3d at 66 (citing Restatement § 343A(1). That exception applies in two situations. First, when the possessor of land "has reason to expect that the invitee's attention may be distracted" so that she will not discover or will forget the obvious danger. Restatement § 343A cmt. f. And second, when the possessor of land "has reason to expect that the invitee will proceed to encounter the known or obvious danger because" to a reasonable person in that position "the advantages of doing so would outweigh the apparent risk." *Id.*

For the first situation, Ms. Smagala has not designated any evidence showing that Embassy Suites had reason to expect that a distraction would cause her to forget the obvious danger. *See* Restatement § 343A cmt. f; *Merrill v. Knauf Fiber Glass GmbH*, 771 N.E.2d 1258, 1267 (Ind. Ct. App. 2002). Without a reason to expect a distraction, Embassy Suites could "reasonably assume" that Ms. Smagala would "protect [herself] by the exercise of ordinary care." Restatement § 343A cmt. e; *accord Mason v. Ashland Exploration, Inc.*, 965 F.2d 1421, 1426–27 (7th Cir. 1992) (applying Restatement § 343A via Illinois law and finding no liability as a matter of law because Plaintiff admitted that he knew about the dangerous condition, no evidence showed any distraction, and Defendant "could reasonably anticipate that [Plaintiff] would be circumspect and would take measures to protect himself").

9

For the second situation, Embassy Suites had no reason to expect that Ms. Smagala would decide that the advantages of braving the stairs in the dark to go to the bathroom would outweigh the risk. This situation applies when the "only other choice" is worse than facing the obvious risk. *Jakubiec v. Cities Serv. Co.*, 844 F.2d 470, 472 (7th Cir. 1988) (applying Restatement § 343A via Illinois law and finding that it's not unreasonable to face a known or obvious risk when the only alternative is to forego assigned job duties); *see Williams v. Wal-Mart Stores E. LP*, No. 1:16-cv-2210-RLY-MPB, 2017 WL 6997731 at *4 (S.D. Ind. Nov. 22, 2017). That is not the case here because Embassy Suites provided a bathroom on the suite's second floor. Ms. Smagala forgot about that bathroom, dkt. 86-2 at 17 (Smagala Dep. at 62), but the standard is what Embassy Suites can reasonably expect from a reasonable guest, *see Douglass*, 549 N.E.2d at 370 ("[A] landowner's knowledge is evaluated by an objective standard."); Restatement § 343A, cmt. f. Here, it could reasonably expect its guests to use the bathroom on the same floor instead of trying to navigate unlit stairs.

In short, the danger from the unlit and shallow stairs was obvious and no reasonable jury could find from the designated evidence that Embassy Suites should have anticipated the harm despite that obviousness. *See* Restatement § 343A cmt. f. Embassy Suites is therefore entitled to summary judgment.[3]

---

[3] Because Embassy Suites is entitled to summary judgment on this basis, the Court does not address its argument that Ms. Smagala's claims are barred by comparative fault.

# IV.
# Conclusion

Embassy Suite's motion for summary judgment, dkt. [65], is **GRANTED**. Ms. Smagala's motions asking the Court to take judicial notice of building codes are **DENIED as moot**. Dkt. [87]; dkt. [91]. Final judgment will issue in a separate entry.

**SO ORDERED.**

Date: 1/14/2020

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Catherine A. Breitweiser-Hurst
JOHNSON & BELL, P.C.
breitweiserhurstc@jbltd.com

Edward W. Hearn
JOHNSON & BELL, LTD. (Crown Point)
hearne@jbltd.com

James Howard Young
YOUNG & YOUNG
jim@youngandyoungin.com